**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| NITROCREAM LLC,<br><br>Plaintiff,<br>v.<br><br>CHILL-N NITROGEN ICE CREAM FRANCHISING LLC, d/b/a CHILL-N NITROGEN ICE CREAM and/or CHILL N7 NITROGEN ICE CREAM, CHILL-N ICE CREAM LLC,<br><br>Defendants. | Case No. 1:25-cv-22836-DPG<br><br>**PLAINTIFF NITROCREAM LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |

Pursuant to the Court's Scheduling Order [D.E. 70], Plaintiff NitroCream LLC ("Plaintiff"), provides the instant Responsive Claim Construction Brief to the Opening Biref of Defendants [D.E. 84] (hereinafter, "Br.")[1] regarding terms of U.S. Patent No. 7,455,868 C2 (the "'868 Patent").[2] This brief is supported by the Declaration of Joseph A. Farco, Esq. ("Farco Decl.") and Exhibits I-K attached thereto, of which Exhibit I is the April 2, 2026 Deposition of Dr. Kevin Keener ("Keener Dep. Tr.").[3]

---

[1] All citations to Defendants' Claim Construction brief (D.E. 84) shall refer to the page number at the bottom center of each page as opposed to the electronic filing number at the top right corner.

[2] All citations to the '868 Patent, which was previously filed as Farco Decl. Ex. A (D.E. 83-2), will be to column and line numbers using the following convention: "[Column]:[line(s)]". The claims of the '868 Patent comprise the claims listed in column 4 of the patent except where a claim has been superseded by a claim listed on Reexamination Certificate 7,455,868 C1. For purposes of this briefing the subsequent Reexamination Certificate confirming all claims as patentable, Reexamination Certificate 7,455,868 C2, has not been included.

[3] All citations to Keener Dep. Tr. will follow the convention: "[Page]:[line(s)]".

## I. RESPONSE TO DEFENDANTS' PROPOSED CLAIM CONSTRUCTIONS

### A. The Definition of Person of Ordinary Skill in the Art

Defendant's expert, Dr. Kevin Keener ("Keener") was offered to provide extrinsic evidence testimony regarding certain claim terms and phrases in dispute. Keener testified that certain language in the claims, i.e., visible vapor, is either wrong, misconstrued, or inconsistent given his understanding that cryogenic vapor is not visible. *See* Keener Dep. Tr. 132:7 – 141:2. Yet, Keener acknowledged that according to his definition the person of ordinary skill in the art ("POSITA"), a POSITA and the layman could be confused by this claim term. *See* id. at Tr. 103:17 – 104:24. Respectfully, if a claim term is considered confusing under any of Keener's definitions of POSITA, then Keener's POSITA definitions must be wrong. *Cf.* Br. at 3.

Given Keener's equivocation on the definition of POSITA, the Court is respectfully requested to determine which version of POSITA properly applies after a full evidentiary hearing. Since Defendants have not argued indefiniteness of any of the '868 Patent claims, the need to confirm the POSITA at this stage is premature.

### B. "Ice Cream Product" – '868 Patent, Claims 1, 19

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Traditional ice cream, sherbert, soft ice cream, frozen yogurt, gelato, soy-based ice cream, and milkshakes. | Plain and Ordinary Meaning |

While not disputing Plaintiff's definition, Defendants suggest that the Court need not construe claim terms unless there is a "fundamental dispute." Br. at 3. However, the Court need only look at the proposals of the parties to see that the parties do not agree with the interpretation of "ice cream product." *See supra* and Br. at 3. For the reasons stated in Plaintiff's opening claim construction brief, the Court should interpret "ice cream product" in the way stated in the '868 Patent, namely, "[a]s used herein, the terms 'ice cream' and 'ice cream products' are considered

to include but not be limited to traditional ice cream, sherbert, soft ice cream, frozen yogurt, gelato, soy-based ice cream, and milkshakes." '868 Patent, 1:15-16; 2:3-7. That definition controls.

**C. "control valve" – '868 Patent, Claims 1, 16-17, 19**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Mechanical or electrical device that can moderate flow of fluid. | Plain and ordinary, but excluding any control valve that is "controlled based on a feedback loop based on a load on the agitator or a temperature of the medium or a temperature of the exhaust." |

Rather than consult the claim language or the '868 Patent specification, Defendants jump right to the prosecution history of the '868 Patent and declare that this must control the Court's determination of the proper scope of this claim term. *See* Br. at 4-5. They do this because even Keener admits that a "control valve" is something that can "regulate flow." *See* Keener Dep. Tr. 143:7-11.

However, according to the Federal Circuit, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). In this instance, the prosecution history on which Defendants relied is not only unclear, but any arguments that could have possibly affected claim scope were rescinded by the Applicant during U.S. Reexamination Control No. 90/019,608 (the "Second Reexamination"). *See* Farco Decl. Ex. J - June 6, 2025 Response to Non-Final Office Action in *Ex Parte* Reexamination at pages 1-3 (rescinding arguments on pages 9-15 discussing Wisniewski reference). As discussed infra, there was no disclaimer of scope as to "control valve," but even if there was, Applicant clearly rescinded such a disclaimer on the record of the Second Reexamination of the '868 Patent. *See* Hakim v. Cannon Avent Grp., 479 F.3d 1313, 1318 (Fed. Cir. 2007) ("Although a disclaimer made during

prosecution can be rescinded, permitting recapture of the disclaimed scope, the prosecution history must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be revisited.") Defendants' attempt to rely on a since-rescinded disclaimer to narrow the claim term "control valve" should be rejected.

Assuming the Court does not find a rescission of any purported disclaimer to have taken place during the Second Reexamination, the Applicant argued that the prior art did not practice the step of introducing "a sufficient amount of the liquified gas controlled by the control valve," to "produce a visible amount of cryogenic vapor flowing from an open top of a container." *See* D.E. 84-4 at 11 of 17. The Applicant argued that the prior used its control valve to control the temperature of the medium or the exhaust. Id. The reference to the prior art's feedback loop was merely referring to the embodiment of the prior art and not a clear and unequivocal proclamation that the "control valve" can never use a feedback loop.

Focusing on the entire prosecution history, Applicant never stated that the "control valve" must be a particular type of control valve or exclude a particular type of controller. To the contrary, the Applicant identified the limitation "wherein a sufficient amount of the liquified gas controlled by the control valve is introduced into the container to produce a visible amount of cryogenic vapor flowing from the open top of the container," as being supported by column 2, lines 54-56 of the '868 Patent, which recite: "control valve 20 is provided to selectively control the flow of the liquefied gas from the tank 16 to the container 12…when the liquified gas exits the end of the line 18, it produces a cold, visible vapor…." *See* D.E. 84-4 at 7-8 of 17. Critically, Applicant never cited to any written description support for a control valve lacking a feedback loop since such a disclosure is nowhere in the '868 Specification. To conclude that a patentee narrowed his claim, the disclaimer must have been with "reasonable clarity and deliberateness." Superguide Corp. v.

Directv Enters., Inc., 358 F.3d 870, 875 (Fed. Cir. 2004) (quotations omitted). Defendants' citations to the prosecution history fall far short of demonstrating that the patent applicant deliberately disclaimed the plain and ordinary meaning of "control valve" with "reasonable clarity."

To the extent Applicant had not rescinded the arguments on which Defendants now rely for disclaimer, the record reflects the Applicant's view of the limitation as broadly covering what is provided in '868 Patent, Column 2, lines 54-56, none of which detailing the exclusion of a control valve that uses a feedback loop. Further, assuming there was no rescission, the Court should find that the argument referenced by Defendants merely distinguished prior art based on the method that the prior art practiced using its control valve as opposed to the specific control valve it used. In either case, the Court should reject Defendants' invitation to apply a rescinded, unclear, and ambiguous prosecution history disclaimer to the limitation in question, especially when doing so would result in a construction that has no support in the specification.

**D. "selectively dispense" – Claim 1**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | The operator of the mechanical mixer chooses whether to dispense the cryogenic liquefied gas or not. |

According to Defendants, this limitation only asks whether the control valve dispenses cryogenic liquified gas and nothing further. Br. at 6. However, this binary definition would render the phrase "wherein a sufficient amount of the liquified gas controlled by the control valve is introduced into the container to produce a visible amount of cryogenic vapor flowing from the open top of the container," a nullity because the "sufficient amount of the liquified gas" would need to be selected in order to produce a visible amount of cryogenic vapor. Using Defendants' proposal, a control valve would meet the claim language merely by having an "on" and an "off"

selection. Clearly, the term "selectively dispense" includes more than just opening and closing a control valve. Rather, to "selectively dispense," the control valve must have at least two open positions for either of them to be selected to "dispense" anything.

To the extent Defendants ask this Court to find this claim term to merely ask for an open or closed control valve as opposed to one that has multiple open valve states, it should be rejected as being contradictory of the claim language and the specification, which teaches that differing amounts of cryogenic gas can be used depending on the desired ice cream product. *See* '868 Patent, 2:66-67 ("The amount of liquified gas used depends on the desired product.")

**E. "Line" – Claims 1, 19**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A fluid conduit | A conduit positioned between a cryogenic tank and a container for supplying cryogenic liquefied gas from the tank to the container, the conduit not being configured or intended to direct, deflect, or manage vapor or condensation. |

Defendants admit that their construction of the word "line" must "exclude[] additional elements… ." Br. at 7. Yet, Defendants' own expert, Dr. Kevin Keener ("Keener") admitted that a line "is a conduit or other defined path of fluid flow from one location to another." Keener Dep. Tr. 142:6-10. Keener also admitted that "[a] line can have any shape. And a line itself is a conveyance." Id. at 142:13-19.

The general rule from the Federal Circuit is that the Court must apply the plain and ordinary meaning of a claim term, here "line", unless there is evidence of either of "two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Computer Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012). As in Thorner, there is no evidence here warranting the negative limitations Defendants seek to

add to the term "line." Thus, this Court should reject such a request and adopt Plaintiff's construction.

### F. "Cryogenic Liquefied Gas" / "Liquefied Gas" – Claims 1, 2, 16-19

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | Plain and Ordinary Meaning |

Defendants cannot seriously dispute that the claim terms "Cryogenic Liquefied Gas" and "Liquefied Gas," must be broad enough to include "liquified nitrogen," and so that construction should control.

### G. "Vapor" – Claims 1, 8-10, 14-15, 19

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A visible cold cloud | The non-visible gaseous phase of a substance resulting from the phase transition of a liquid to gas.[4] |

The Court should reject Defendants' feigned inability to understand the term "vapor" and over-reliance on the litigation-inspired declaration of Keener. *See* Br. at 9-12. Defendants' assert that the claims do "not define vapor itself as visible." Br. at 9. Wrong – '868 Patent Claim 9 recites, "[t]he method of claim 1, further comprising positioning the container in a place in a food service establishment where the vapor ***is*** visible to a customer." (emphasis added). The '868 Patent describes "the vapor clouds are visible to customers." '868 Patent, 2:23-31; 2:34. That passage from the '868 Patent refutes Defendants' representation to the Court that "clouds and vapor are distinguished in the specification," when, in fact, the '868 Patent uses the terms together as a "vapor cloud[]" that is "visible to customers."

---

[4] Defendants in their invalidity contentions interpreted the term "vapor" as "visible plumes formed by condensation of ambient moisture when exposed to cryogenic liquified gas." *See* D.E. 83-7 at pp. 15-16, 19, 56, 58-59, 61, 65, 70, 74. Defendants cannot construe a claim term in different ways for infringement and invalidity. Source Search Techs., 588 F.3d at 1075.

To the extent Defendants ask the Court to rely on unnecessary extrinsic evidence, their expert, Keener, admitted, that "when it [the '868 Patent] says visible vapor, it's a fog or a mist. That is what it has to be. So it's the water that's condensed. That is how a person of ordinary skill in the art would understand this claim or this particular background."[5] Keener Dep. Tr. 138:23 – 139:5. Therefore, the Defendants' attempt to overcomplicate a dispute over the meaning of the term "vapor" should be rejected and Plaintiff's proposed construction followed instead. Keener's testimony clearly admits that the reader would understand to what this term is referring.

**H. "Cryogenic Vapor" – Claims 1, 19**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Vapor from a cryogen | Vapor of a cryogen that is formed when a cryogenic liquid undergoes vaporization upon exposure to ambient atmospheric conditions. |

Both parties agree that a "cryogenic vapor" is a "vapor from a cryogen." The disagreement involves additional process limitations Defendants seek to insert, but are nowhere recited in the '868 Patent claims. Defendants do not cite to any intrinsic evidence to support one of the two exceptions to the general rule of giving claim terms their "plain and ordinary meaning." *See* Thorner, 669 F.3d at 1365. Thus, Defendants have no basis to ask for more than the plain and ordinary meaning common to their and Plaintiff's construction, namely, a "vapor from a cryogen."

Instead, Defendants again ask the Court to rely on extrinsic evidence without even attempting to understand what the intrinsic evidence says about the term "cryogenic vapor." *See* Br. at 11-12. '868 Patent, Claim 2 recites, "wherein the liquified gas is liquified nitrogen," which

---

[5] To the extent Defendants use Keener to contradict the '868 Patent claims or specification, this Court should disregard his declaration testimony. Homeland Housewares, LLC v. Whirlpool Corp., 865 F.3d 1372, 1378 (Fed. Cir. 2017) ("[W]e must disregard the testimony of an expert that is plainly inconsistent with the record.").

is a known cryogen. Thus, the "vapor" term, which is discussed *supra*, is modified by "cryogen" merely to explain the material make-up of the "vapor" and nothing more. The '868 Patent explains that "[w]hen the liquefied gas exits the end of the line 18, it produces a cold, visible vapor." '868 Patent, 2:58-59. Therefore, Defendants' lack of consideration of the intrinsic record to the '868 Patent belies their unwarranted narrowing of the plain and ordinary meaning of "cryogenic vapor" in contradiction of the '868 Patent claims and specification.

### I. "Support" – Claim 1

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning – to hold up or in position | Plain and Ordinary Meaning |

Since neither party disputes that "support" should be given its plain and ordinary meaning, Plaintiff respectfully requests the Court utilize the plain and ordinary meaning given by this Court in Aspex Eyewear, Inc. v. Concepts in Optics, Inc., No. 00-7067-CIV, 2005 WL 6225432, at *13 (S.D. Fla. June 13, 2005) (construing "support" to mean "to hold up or in position") aff'd, 211 F. App'x 955 (Fed. Cir. 2007).

### J. "Bottom Surface" – Claim 1

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning – lowermost surface | A structure at the base of a mixer to physically contact and support the container. |

Defendants ask the Court to interpret "bottom surface" as a "structure," which even their own expert admits is wrong. *See* Keener Dep. Tr. 154:14-16 ("So when it [the '868 Patent] says surface that is one plane of that particular component I guess I would say."); *see also* id. at Tr. 170:14 – 171:5. Yet, Keener states that claim 1 of the '868 Patent "[r]equires the container to contact the base…" because "[t]hat is the interpretation a person of ordinary skill in the art would arrive at in re-examination." Id. at Tr. 164:2-10.

The base is a separate structure from the powered mixer or the container and is annotated numeral 40 in the '868 Patent figures:

FIG. 2




Keener testified that "the bottom surface includes the base." Id. at Tr. 173:1-4. However, the "bottom surface" recited in Claim 1 is the "bottom surface" of a powered mixer, not the bottom surface of another structure nowhere recited in the claim, i.e., the "base." Indeed, Claim 1 of the '868 Patent does not require a "base" whatsoever, and to include that term in the definition of "bottom surface" is merely another attempt to improperly read limitations from the specification into the claims. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments")

The intrinsic evidence refutes Defendants' attempt to overly narrow the "bottom surface" claimed phrase. First, during re-examination, the applicant explained the claim limitation "the powered mixer comprises a support having a bottom surface positioned on a work surface, the bottom surface being configured to support the container above the work surface," was supported by '868 Patent, Column 3, lines 30-35, which refer to a support 30 having "a plurality of feet or

pads 34 to support the open bottom slightly above the support surface." *See* D.E. 84-4 at page 9 of 17. At no point did the applicant take the position that the container must contact a "base" as Keener testified. On the contrary, the patent applicant focused on the support 30 and the feet or pads 34 for showing the contact points with the work surface. Again, never once was the "base" mentioned in that discussion with the patent office. *Cf.* id.

Second, the term "base" was presented with the original claims in the application that was filed as the '868 Patent but were subsequently withdrawn. *See* Farco Decl. Ex. K – U.S. Patent Application No. 10/725,000 as filed. Thus, the patent applicant distinguished claims that recited a "base" from those that did not recite a "base" as being in contact with the container. These claims were subsequently recited in a different, but related patent application to the application that became the '868 Patent, U.S. Patent Application No. 12/2680,023 (Farco Decl. Ex. L or "the "Divisional Application").[6] The Divisional Application contained a claim which recited: "[t]he apparatus of Claim 15, further comprising a base, wherein the electric resistance heating element is in the base, and ***the container contacts the base***." *See* Divisional Application, p. 9 (emphasis added). "[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same patent application." Microsoft Corp. v. Multi–Tech Sys., Inc., 357 F.3d 1340, 1349 (Fed. Cir. 2004). Consequently, Claim 1 of the '868 Patent cannot, as Defendants and Keener suggest, require a "base," because that term is a separate claim term that was withdrawn from the application that became the '868 Patent and then specifically recited in the claims of the Divisional Application. The applicant's choice to

[6] Despite admitting that related patent applications are relevant to claim construction analysis, Keener conceded he was not aware of and did not otherwise review any related applications to the '868 Patent, including the provisional patent or the divisional application that was filed after the '868 Patent. *See* Keener Dep. Tr. 60:13-62:1.

specifically recite that term in the Divisional Application claims but not the '868 Patent claims is additional reason that '868 Patent claim 1 does not require any such "base" as a "structure" in the "bottom surface" of the powered mixer. *See* Kara Tech. Inc. v. Stamps.com Inc., 582 F.3d 1341, 1347 (Fed. Cir. 2009) ("when the inventor wanted to restrict the claims to require the use of a key, he did so explicitly.")

Therefore, the Court must reject Defendants' proposal at least because it reads a "base" structure into the definition of "bottom surface," but a "base" is not required in any '868 Patent claims.

**K. "Bottom Surface Being Configured to Support the Container Above the Work Surface." – Claim 1**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The lowermost surface is capable of maintaining the container above the work surface. | The structure at the base of a mixer to physically contact and support the container, the structure resting upon a horizontal surface, such as a countertop or table. |

Defendants argue that "Plaintiff's proposal does not reconcile a bottom surface or lowermost surface that interfaces with the work surface while also being capable of maintaining the container above the work surface, as the claim so requires." Br. at 14. Defendants are not being candid. Their definition reads in an entirely new structure into the claim, the "base" of a mixer, and then uses this extraneous term to suggest that the "base of a mixer" must "physically contact and support the container." Respectfully, no such requirement is embedded in the language of this claim limitation.

The '868 Patent describes the "base 40" as part of a preferred embodiment. However, the Federal Circuit strictly forbids reading "base" into the '868 Patent claims even if it was the only disclosed embodiment in the patent. Thorner, 669 F.3d at 1366 ("It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read

limitations from the specification into claims; we do not redefine words.") Keener uses this embodiment to conclude, "the bottom surface being configured to support the container above the work surface implies that the base is part of that configuration." Keener Dep. Tr. 159:20 – 160:6 ("If we would look at … Figure 2 and we would remove the base. Then there wouldn't be any support.")

However, Keener admitted that the feet (items 34 in Figure 2 of the '868 Patent – annotated in red below) were "configured to support the container above the work surface" even though they are not in direct contact with the container (item 12 in Figure 2 of the '868 Patent – annotated in yellow below):




> Q. So that numeral 34 underneath the rear of the structure identified by 14 in Figure 2 of the 868 Patent, is that foot 34 in the back configured to support the container above the work surface?
>
> ATTORNEY DAVIS: Objection. Asked and answered.
>
> THE WITNESS: It is. It is part of what I would say support, Yes.
>
> (BY ATTORNEY FARCO): Q. Part of the support, right. But is it part of the bottom surface?
>
> A. I would see it, yes, as part of the bottom surface, because it's there as again part of the support above the work surface. So it's part of the bottom surface.

Keener Dep. Tr. 178:13 – 179:5.

Keener's admission all but refutes Defendants' proposed construction that requires direct contact between the "bottom surface" and the "container," because Keener stated that feet 35 are part of the bottom surface and feet 35 are "configured to support the container above the work surface," despite the fact that the container 30 never directly contacts feet 35. Therefore, the claim limitation "bottom surface configured to support the container above the work surface" does not require direct contact between the container and the bottom surface for the above reasons, including the damning admission made by Keener, Defendants' expert.

### L. "Mixing in Sufficient Liquefied Gas to Surround At Least Most of the Container" – Claim 7

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Mixing in enough liquified gas to create vapor that reduces the visibility of the container in some degree or measure. | Either liquified gas being introduced into a container such that the gas overflows from the container or dispensing gas around the container's exterior, or having cloud or fog surround the container through the introduction of liquified gas into the container. |

Defendants again assert that "intrinsic evidence is essentially silent on the matter," and so, one again, the Court has to defer to the litigation-inspired testimony of Keener. Br. at 15.

Contrary to Defendants' assertion, Claims 1 and 7 and the '868 Patent specification are consistent in discussing how "[a]s a result, after the deflector 22 directs the vapor laterally outward from the container 12, the vapor drifts downwardly along the sides of the container 12, somewhat reducing the visibility of the container. Sufficient liquified gas is used that it surrounds at least most of the container." '868 Patent, 3:13-18. Plaintiff's construction adheres to this disclosure by referring to the mixing step of Claim 1 to which claim 7 refers and emphasizing that the vapor created through mixing liquified gas reduces the visibility of the container in some degree or measure (i.e., somewhat).

Citing to Keener's declaration, Defendants assert that this limitation could be construed in one of two ways: (1) where liquefied gas is introduced into the container in sufficient quantity that it overflows or spills from the container and flows around the outer surfaces of the container, or (2) where liquefied gas is dispensed or directed in a manner that circulates the liquefied gas around the container's exterior. Br. at 15. However, Keener admitted that the second alternative is not even described in the patent specification. *See* Keener Dep. Tr. 184:2-2 – 185:25. The Federal Circuit has stated that it will reject a proposed broad claim construction that was not supported by the specification, even if the construction was plausible if "[d]ivorced from the specification." UltimatePointer, L.L.C. v. Nintendo Co., 816 F.3d 816, 824 (Fed. Cir. 2016) (quoting Decisioning.com, Inc. v. Federated Dept. Stores, Inc., 527 F.3d 1300, 1308 (Fed. Cir. 2008)). While Defendants' proffer an alternative interpretation for this limitation without any context for it in the '868 Patent, "[t]he only meaning that matters in claim construction is the meaning in the context of the patent." Trs. of Columbia Univ. in City of New York v. Symantec Corp., 811 F.3d 1359, 1363 (Fed. Cir. 2016).

Therefore, Defendants' proffered construction for this limitation should be rejected to the extent one of its alternatives conflicts with Plaintiff's proposed construction.

**M. "deflecting laterally" – Claim 8, 14-15, 19-21**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Impeding something from moving in a straight direction. | Redirecting some or all of the flow of a moving gas from a generally vertical or upward-downward direction, into a generally horizontal or radially outward direction relative to a deflector. |

Defendants assert that "[i]mpeding something from moving in a straight direction," "would encompass any obstruction that slows or interferes with motion, even if the flow were not redirected ***laterally*** at all." Br. at 17 (emphasis in original). However, Defendants' expert, Keener,

testified that a deflector can be a static device that forces a fluid to change movement. *See* Keener Dep. Tr. 196:1-24. Thus, in the context of the '868 Patent, Plaintiff's proposed construction is not as "farfetched" as Defendants make on in their briefing. Nevertheless, as stated in Plaintiff's opening brief, Plaintiff has revised its construction as follows:

> Redirecting some or all of the movement from a generally vertical or upward-downward direction, into a generally horizontal or radially outward direction.

Defendants' use of the word "deflector" in their proposed definition of "deflecting laterally" would be redundant since the term "deflector" is specifically recited elsewhere in the claims.

Again, Plaintiff would ask that the Court adopt the above-modified construction that was based on Defendants' Proposed Construction.

**N. "deflector" – Claim 8, 14-15, 19-21**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Structure that impedes straight movement of something | A physical structural element specifically configured and positioned to intercept gas or vapor flow and actively redirect that flow in a different direction. |

Keener admitted that "the deflector could be a stacked [sic., static] device that results in some type of momentum change in the gas or vapor." *See* Keener Dep. Tr. 202:15-20. Keener further agreed that the '868 Patent discloses in Figure 1 "that it's [line 18] dispensing the liquid nitrogen into the container. It's [line 18] dispensing that through the deflector." Id. at 214:4-16. Keener then admitted that according to Figure 1 of the '868 Patent, "the deflector can surround the opening of line 18 while it's dispensing the cryogen into the container." Id. at 214:25 – 215:8.

Defendants' definition reads a limitation into the claims by requiring a "structural element specifically configured and positioned to … actively redirect," when none of these words appear in the '868 Patent claims with respect to the deflector term. However, the term "configured to" was specifically recited in Claim 1 of the '868 Patent with respect to the bottom surface of the

support of the powered mixer; in contrast, the deflector of Claims 8, 14-15, 19-21 is never expressly recited as being "configured" or "specifically configured" to do anything.

The Court cannot repeat previously used claim language from Claim 1 through Defendants' proffered interpretation of the "deflector". Indeed, when the applicant wished to use the term "configured to" with respect to another claim element, the applicant knew how to do so explicitly and claim 1 is evidence of that fact when it recited a "bottom surface being configured to …." *See* Kara Tech., 582 F.3d at 1347 ("when the inventor wanted to restrict the claims to require the use of a key, he did so explicitly.")

Therefore, the Court must reject Defendants' overly narrow interpretation of the "deflector" claim term.

## II. CONCLUSION

Plaintiff respectfully requests the Court rule as outlined by Plaintiff above in this brief and reject Defendants' proposals to the extent they are legally improper, factually unsupported, or otherwise contrary to the '868 Patent itself.

Dated: April 15, 2026
Miami, Florida

Respectfully Submitted,

**BOCHNER PLLC**

/s/ Ishmael A. Green
Ishmael A. Green, Esq.
Fl. State Bar No.: 109100
BOCHNER PLLC
1110 Brickell Ave #400k-61
Miami, FL 33131
(561) 465-6669
igreen@bochner.law

Joseph A. Farco, Esq. (pro hac vice)
BOCHNER PLLC
1040 6th Avenue, 15th Floor

New York, NY 10018
(212) 506-6143
jfarco@bochner.law

## CERTIFICATE OF SERVICE

This is to certify that, on April 15, 2026, I caused a true and correct copy of **PLAINTIFF NITROCREAM LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** to Defendants to be served upon Defendants' counsel via the ECF filing system designed to serve counsel at the following email addresses:

johneagan@malloylaw.com
vbruzos@malloylaw.com

/s/ *Ishamel A. Green*
Ishmael A. Green, Esq.